IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| APPROXIMATELY $480,031 IN UNITED ) | Civil No. 3:25-cv-00715 |
| STATES CURRENCY SEIZED FROM ) | |
| OLEKSANDR SYSTRENSKYI ON ) | |
| FEBRUARY 18, 2025 IN OR AROUND ST. ) | |
| JOHN'S COUNTY, FLORIDA AND ST. ) | |
| AUGUSTINE, FLORIDA. ) | |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

NOW COMES the United States of America, Plaintiff herein, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

**INTRODUCTION**

1. This is a civil action *in rem* against approximately $480,031 in United States Currency seized from Oleksandr Systrenskyi ("Systrenskyi") on February 18, 2025, during a traffic stop in or around St. John's County, Florida and St. Augustine, Florida ("the Currency").

2. The day of the traffic stop, Systrenskyi, who regularly flies one-way from Florida to Charlotte, had flown one-way from Florida to Charlotte and rented a white Toyota 4Runner. On the same day, law enforcement observed known methamphetamine and narcotics trafficker Dionisio Aguirre Garcia, who was later indicted for narcotics conspiracy, carry a gray duffle bag from a residence. Later, the driver of the same 4Runner in Charlotte picked up Garcia, with his gray bag. The 4Runner then drove a brief distance, dropped off Garcia, without his gray bag, and drove away. Hours later, law enforcement stopped the 4Runner, driven by Systrenskyi, in Florida.

A K9 alerted and law enforcement searched the 4Runner. Law enforcement found two duffle bags, one of which was gray, in the 4Runner. The gray duffle bag contained the currency identified herein, packaged in silver with black lettering on the outside of the packaging, while the other duffle bag also contained some of the currency identified herein. Systrenskyi provided evasive answers during the traffic stop and has no known source of legitimate income. Thus, law enforcement seized the Currency. Later, back in Charlotte, when law enforcement searched the residence and suspected stash house from which Garcia had previously exited with the duffle bag, they found, among other things, (1) two kilogram-sized bricks of cocaine and (2) a large amount of currency packaged in the same manner and with similar markings on the packaging to the currency seized from Systrenskyi.

3. Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and/or is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846. Moreover, the Currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because the Currency constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960, or any property traceable to such property.

**JURISDICTION AND VENUE**

4. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

5. This Court has jurisdiction over this action commenced by the United States under 28 U.S.C § 1345 and over this action for forfeiture under 28 U.S.C. § 1355(a). The Court has in rem jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

6. This Court has venue pursuant to 28 U.S.C §§ 1355 and 1395. Venue is proper because the acts or omissions giving rise to the forfeiture occurred in this district.

7. Based on the following facts, verified by Federal Bureau of Investigations ("FBI") Special Agent ("SA") Tristan Stewart, this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

### *Overview of the Narcotics Investigation and Money Seizure*

8. On February 18, 2025, Oleksandr Systrenskyi traveled on an American Airlines one-way flight from Fort Lauderdale–Hollywood International Airport (FLL) to Charlotte Douglas International Airport (CLT). According to his February American Airlines history, Systrenskyi also traveled on one-way flights from FLL to CLT on February 4, 2025, and on February 12, 2025.

9. On February 18, 2025, at approximately 11:47 AM, Systrenski rented a white Toyota 4Runner with North Carolina license plate KME1718 from Avis at CLT. At that time, the 4Runner was scheduled to be returned to Avis at FLL by 11:30 PM that same day.

10. On February 18, 2025, an FBI surveillance team that was conducting an ongoing narcotics investigation of multiple individuals conducted surveillance on Dionisio Aquirre Garcia ("Garcia"), a known narcotics distributor in Charlotte, North Carolina.

11. On February 18, 2025, at approximately 12:32 PM, a member of the surveillance team observed Garcia exit his residence, at 1216 Nia Road, Charlotte, North Carolina, carrying a grey duffle bag. Below is a picture of Garcia carrying the gray duffle bag and exiting the residence:



Garcia left the area of his residence on foot.

12. At approximately 12:50 PM, a member of the surveillance team observed Garcia standing outside a restaurant at 10102 Albemarle Road, Charlotte. Garcia was still carrying the grey duffle bag. At approximately 12:52 PM, a member of the surveillance team observed Garcia, carrying the grey duffle bag, walk to the parking lot of an adjacent Dollar General store and enter a white Toyota 4Runner. At approximately 12:53 PM, the white Toyota 4Runner drove Garcia back to the restaurant. Garcia exited the 4Runner but was no longer carrying the grey duffle bag. Then, the 4Runner drove away.

13. The surveillance team followed the white Toyota 4Runner and observed the license plate of the 4Runner to be North Carolina license plate KME1718, the same license plate of the white Toyota 4Runner that Systrenskyi rented from Avis at CLT. After obtaining the license plate information, the surveillance team discontinued surveillance on the 4Runner.

14. Later, on February 18, 2025, at approximately 7:40 PM, law enforcement officers, in or around St. John's County, Florida, near St. Augustine, conducted a traffic stop of the white 4Runner as it traveled south-bound along I-95. Systrenskyi was the driver and lone occupant.

15. During the February 18, 2025 traffic stop, law enforcement deployed K9 "Riggs" to conduct an open-air sniff of the 4Runner. K9 "Riggs" alerted to narcotics inside of the 4Runner. Based on the K-9 alert and other information, law enforcement officers on scene searched the 4Runner and discovered two duffle bags inside the vehicle. The duffle bags contained bulk United States Currency.

16. Law enforcement located one of the duffle bags on the front-passenger floorboard. This duffle bag was grey and contained bundles of bulk United States Currency, totaling approximately $200,000, wrapped in silver duct tape with black numbers written on the outside. The phrase, "#10," was written in black on the outside of at least one of the bundles. The Currency was in numerous denominations, including approximately 721 one-hundred dollar bills; 225 fifty dollar bills; 5,700 twenty dollar bills; 243 ten dollar bills; and 44 five dollar bills.

17. Law enforcement located the other duffle bag on the rear passenger floorboard. This duffle bag was padlocked and contained United States Currency, totaling approximately $280,031, wrapped in rubber bands. The Currency was in numerous denominations, including approximately 122 one-hundred dollar bills; 290 fifty dollar bills; 12,030 twenty dollar bills; 1,056 ten dollar bills; 432 five dollar bills; and 11 one dollar bills.

18. After Systrenskyi provided incomplete and evasive explanations, discussed more fully below, law enforcement officers at the traffic stop seized the United States Currency and Systrenskyi's cell phone.

19. Law enforcement captured images of the traffic stop. Four of the images are as follows:



20. On February 19, 2025, the Charlotte-area narcotics investigation led to the federal indictment (WDNC Case 3:25CR18) of Elver Aguirre Garcia, Dionisio Aguirre Garcia, and Francisco Arrollo Silva for, among other charges, conspiracy to distribute methamphetamine from in or around June 2024 through on or about December 2024. The charges remained temporarily sealed following additional law enforcement activity.

21. Specifically, on February 20, 2025, the FBI executed a federal search warrant at 1216 Nia Road, Charlotte, North Carolina. At that time, Garcia was the lone occupant of the residence. Law enforcement arrested Garcia on drug trafficking-related charges.

22. During the February 20, 2025, search of the residence, law enforcement seized several items, including, but not limited to the following items pictured below: (1) two kilogram-sized bricks of cocaine wrapped in black tape, and (2) cash, including but not limited to a bundle of bulk cash wrapped in silver duct tape with "#10" written in black on the outside.



The bundle of cash seized during the search of the residence resembled the bundles of cash seized from Systrenskyi's vehicle in Florida.

### *Systrenskyi's Implausible Explanation for the Money*

23. During the Florida traffic stop, law enforcement spoke with Systrenskyi.

24. Systrenskyi advised law enforcement that he had flown into North Carolina earlier

7

that day and rented the Toyota. He advised that he had met with some friends in Charlotte, North Carolina to collect money to purchase semi-trucks for his logistics business.

25. When law enforcement asked Systrenskyi where he planned to purchase the trucks and asked him to provide the name and phone numbers for the friends who gave him the money, Systrenskyi did not provide an answer to the questions.

26. When law enforcement then asked why some of the money was wrapped in duct tape and how much money was in the vehicle. Systrenskyi could not provide an answer.

27. Systrenskyi was evasive. He became agitated and less cooperative as the conversation continued.

28. After law enforcement seized the Currency and the Department of Justice initiated an administrative forfeiture action for the Currency, Systrenskyi filed a claim.

### *The absence of records on any legitimate income by Systrenskyi.*

29. Law enforcement in Florida requested a wage report on Systrenskyi from the Florida Department of Revenue but were unable to locate any wage information on him. Law enforcement in North Carolina also requested North Carolina Employment Security Commission records on Systrenskyi and received negative results.

30. Further, law enforcement has not identified a legitimate logistics business that owns vehicles or is conducting any activity affiliated with Systrenskyi.

### *The absence of FinCEN or state records reflecting a money transmitting business registration or license by Systrenskyi*

31. Further, law enforcement could not identify any state or federal registration or license for Systrenskyi to conduct a money service or money transmitting business.

### *Conclusion*

32. Based on the aforementioned information, the Currency constitutes narcotics

trafficking proceeds, property used or intended to be used to facilitate narcotics trafficking, and/or property involved in an illegal money transmitting business. Specifically, Systrenskyi obtained the Currency from an indicted methamphetamine distributor; the Currency was in denominations indicative of narcotics trafficking; the packaging of the Currency matched the packaging of Currency obtained, with narcotics, in the narcotics distributor's house that the distributor visited shortly before Systrenskyi picked-up the distributor and his duffle bag; Systrenskyi has no known legitimate income and was evasive in answers to police during the traffic stop; and, Systrenskyi has not registered or obtained a license as a money transmitting business. As such, Systrenskyi obtained/obtains narcotics distribution proceeds from narcotics distributors and transported/transports those narcotics distribution proceeds to narcotics suppliers. Therefore, the Currency is subject to forfeiture.

### FIRST CLAIM FOR RELIEF – THE CURRENCY
### (21 U.S.C § 881(a)(6))

33. The United States incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

34. The Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

## SECOND CLAIM FOR RELIEF – THE CURRENCY
## (18 U.S.C § 1960(a)(1)(A))

35. The United States incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

36. The Currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960.

## PRAYER FOR RELIEF

37. By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the Currency be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the Currency to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 19th day of September, 2025.

        RUSS FERGUSON
        UNITED STATES ATTORNEY

        s/ Benjamin Bain-Creed
        Florida Bar # 0021436
        Assistant United States Attorney

Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Fax: (704) 344-6629
Email: benjamin.bain-creed@usdoj.gov

# **VERIFICATION**

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the _____ day of September, 2025.

_____
Special Agent
Federal Bureau of Investigations